INTERNATIONAL UNION OF BRICK-LAYERS AND ALLIED CRAFTSMEN LOCAL NO. 5, Emil A. Parietti, Jr. and Philip Mosca, as Trustees of the Hudson Valley District Council Bricklayers and Allied Craftsmen Joint Benefit Funds, Plaintiffs,

v.

HUDSON VALLEY DISTRICT COUNCIL BRICKLAYERS AND ALLIED CRAFTSMEN JOINT BENEFIT FUNDS, Andrew Gallante, Sr., Michael Cavallaro, Salvatore Mauro and Roderick Cifferi, III, Defendants.

No. 94 Civ. 3061 (WCC).

United States District Court,
S.D. New York.

June 14, 1995.

Rider, Weiner, Frankel & Calhelha, P.C. (Moacyr R. Calhelha, of counsel), Newburgh, NY, for plaintiffs.

Gellert & Cutler, P.C. (David R. Wise, of counsel), Poughkeepsie, NY, for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Three motions are currently pending before us in this complex and contentious case. Plaintiffs have moved, pursuant to Rule 15(a), Fed.R.Civ.P., for leave to file a second amended complaint, and plaintiffs and defendants have each moved for summary judgment to recover monies allegedly improperly withheld by the other. This order deals only with plaintiffs' motion to amend the pleadings, which we grant in part and deny in part.

## BACKGROUND

This action encompasses numerous claims arising from the turmoil that has troubled the Board of Trustees of the Hudson Valley District Council Bricklayers and Allied Craftsmen Joint Benefit Funds (the "Funds"). We describe in this opinion only those facts relevant to the resolution of this motion.

The Funds are multi-employer, labor-management trust funds organized under the Taft–Hartley Act and ERISA to provide employee benefits to the members of International Union of Bricklayers and Allied Craftsmen Local No. 5 ("Local 5"). Local 5 was formed by order of the International Union's Executive Board on March 31, 1994. It is the exclusive collective bargaining agent for all of the International Union's members within Orange, Dutchess, Putnam, Westchester and Rockland Counties. Before the formation of Local 5, each county was within the jurisdiction of a separate local. Until their dissolution and merger into Local 5, those locals operated collectively under an umbrella organization known as the Hudson Valley District Council ("HVDC"). The Funds are the successors to the various employee benefit funds that were related to the now-defunct locals.

On April 26, 1994, plaintiffs Local 5, Philip Mosca[1] and Emil A. Parietti, Jr., filed this suit. The plaintiffs alleged that on January 7, 1994, following Parietti's election as Secretary–Treasurer of the HVDC, Parietti appointed himself a union-designated trustee of the Funds, replacing defendant Michael Cavallaro. At that time, Parietti also retained Mosca as a union-designated trustee. The parties do not dispute that when the International Union's Executive Committee created Local 5 on March 31, 1994, it appointed plaintiff Parietti as President of Local 5 and granted him "the authority to make all necessary appointments . . ., including the appointment of trustees to all trust funds in which members of Local 5 participate."[2] Complaint, dated April 26, 1994, at ¶ 9.

As originally drafted, the complaint named as defendants the Funds, Cavallaro, employer-designated trustees Salvatore Mauro and Roderick Ciferri, III, and Andrew Gallante, Sr., a former union-designated trustee and former Secretary–Treasurer of the HVDC. Essentially, plaintiffs contended that Cavallaro and Gallante were improperly refusing to relinquish control over the Funds to Parietti.

---

1. The parties agree that Mosca became Secretary–Treasurer of Local 5 upon its creation on March 31, 1994, and that he is currently a duly appointed union-designated trustee. In an affidavit submitted in support of plaintiffs' motion for leave to amend the pleadings, Mosca states that in late June 1993 he was appointed a trustee of the Funds.

2. Pursuant to 29 U.S.C. § 186(c)(5), the Board of Trustees of an employee benefit fund jointly administered by the union and by the employers must be composed of an equal number of employee and employer representatives, appointed respectively by the union and by management.

Plaintiffs sought declaratory and injunctive relief prohibiting Cavallaro from continuing to act as a trustee and directing the Funds and the individual defendants to recognize Parietti as a duly appointed union-designated trustee. Plaintiffs also alleged that the individual defendants had breached their fiduciary duties to the Funds by refusing to permit Parietti to fulfill his obligations as trustee.

On May 3, 1994, plaintiffs applied for a preliminary injunction restraining the defendants from taking any action that would obstruct Parietti's participation on the Board of Trustees. On August 1, 1994, after settlement discussions proved fruitless, the Court issued a preliminary injunction, which prohibited the defendants from interfering with Parietti's authority to appoint union-designated trustees, including himself, and enjoined any trustees removed from office as a result of the court's ruling from interfering with the functioning of the Funds. The preliminary injunction also imposed a stay on all further proceedings in order to provide the parties with an opportunity to resolve the remaining issues.

Meanwhile, defendants answered the complaint and asserted counterclaims against Local 5 for unpaid fringe benefit contributions that the Funds alleged were owed by Local 5 and against Mosca for breach of fiduciary duty based, in part, on his participation as a plaintiff in this litigation.

On July 19, 1994, pursuant to a stipulation, plaintiffs filed an amended complaint that added several new claims to those set forth in the original complaint. Plaintiffs alleged that when Gallante resigned from the Board on June 29, 1993, the Funds improperly awarded him a consulting contract under which he would be paid $168,000 over three years for unspecified services. The amended complaint further alleged that the Funds were improperly withholding from Local 5 dues collected by the Funds for the benefit of the union members.

Defendants' amended answer, dated July 28, 1994, reiterated its counterclaims and added a claim against Parietti, contending that the underlying motive for this litigation is to force the Funds to employ John Parietti, the plaintiff's brother.

At this juncture, the court entered its preliminary injunction and imposed a stay on the proceedings. The defendants appealed the issuance of the preliminary injunction; the Second Circuit affirmed on April 6, 1995. After this case was reassigned to us on March 23, 1995, we held a conference on April 19, 1995, lifted the stay and granted permission for plaintiffs to file the instant motion for leave to file a second amended complaint.[3]

Granting plaintiffs' motion would add an entirely new and rather substantial set of claims to this litigation. Plaintiffs' Proposed Second Amended Complaint (the "proposed complaint") alleges that in 1990, after the International Union's Executive Board had centralized the administration of the various local unions, including Local 44, into the HVDC, the various benefit funds of each of the locals were merged. Plaintiff contends that until the 1990 fund merger, defendant Gallante had sole authority to appoint the two union-designated trustees of the Local 44 plans. Those trustees were Gallante and Cavallaro. Defendant Mauro was one of the two employer-designated trustees. For reasons that are not spelled out in the proposed complaint, each of the four members of the Board of Trustees of the Local 44 funds became a member of the Board of the consolidated Funds.

Plaintiffs further allege that soon after the 1990 merger, the Board of Trustees of the Funds was expanded from four members to eight. Plaintiffs contend that the minutes of a Board meeting held on February 13, 1991 show the addition to the Board of Richard O'Beirne and George Frank, who had previously served as employer-designated trustees of funds associated with other locals involved in the merger. Plaintiffs also allege that the minutes of the May 28, 1991, meeting reflect the addition of two more union-designated trustees appointed by Gallante, in his capaci-

---

**3.** At this stage in the litigation, plaintiffs may amend the pleadings only with the court's permission or with the written consent of the defendants. *See* Fed.R.Civ.P. 15(a). At the conference, defendants expressed their opposition to any further amendment.

ty as Secretary–Treasurer of the recently formed HVDC. Plaintiffs contend that the minutes of meetings held between May 1991 and December 1993 reflect that eight trustees attended and participated in the meetings.

Plaintiffs allege that in mid–1993, when the individual defendants realized that Parietti was likely to be elected Secretary–Treasurer of the HVDC in place of defendant Gallante, the individual defendants embarked on a course of conduct designed to perpetuate their control over the Funds. This conduct included causing the Funds' counsel to write a letter on March 16, 1994, informing the trustees that the Board had never been formally expanded from four to eight trustees. The letter expressed counsel's opinion that O'Beirne and Frank, as well as the two union-designated trustees added in May 1991, were not trustees. The proposed complaint alleges that since March 16, 1994, the defendants have asserted that the Board has only four members and have recognized only Mosca, Mauro, Ciferri and Cavallaro as duly appointed trustees. The preliminary injunction, of course, requires the defendants to treat Parietti, rather than Cavallaro, as a trustee.

Based on this description of events, plaintiffs seek to amend their pleadings to name O'Beirne and Frank as plaintiffs, as well as John Parietti and Manuel Valente, whom Parietti sought to appoint as union-designated trustees in addition to himself and Mosca. Plaintiffs seek declaratory and injunctive relief confirming the status of these individuals as trustees of the Funds, compelling defendants to permit them to carry out their duties as trustees, and confirming that the Board of Trustees has eight members. Furthermore, the proposed complaint would name the International Union as a plaintiff. Finally, the proposed complaint would name the Funds as a plaintiff, based on plaintiffs' contention that six of the eight members of the Board of Trustees would be plaintiffs in this litigation.

Plaintiff's proposed complaint would, for the first time, place squarely in issue the question of whether the Board of Trustees is composed of four or eight members and whether O'Beirne, Frank, John Parietti and Valente are duly appointed trustees. Not surprisingly, given the contentious history of this case, the defendants vigorously contest whether we should permit amendment of the complaint so that we may address these questions.

## DISCUSSION

█ Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The Supreme Court has stated that:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Hanlin v. Mitchelson,* 794 F.2d 834, 840 (2d Cir.1986). The grant or denial of leave to amend is within the discretion of the trial court. *See Foman,* 371 U.S. at 182, 83 S.Ct. at 230.

### A. Proposed Additional Claims

Under this liberal standard, we grant plaintiffs leave to amend their pleadings to assert claims relating to the issues of whether the Board of Trustees is composed of four or eight members and whether O'Beirne, Frank, Valente and John Parietti are duly appointed trustees. Defendants object to the addition of these claims on grounds of prejudice and undue delay. Neither of their arguments is convincing.

█ Defendants argue first that plaintiffs have delayed unduly in raising the issue of the composition of the Board of Trustees. They point out that plaintiffs filed the original complaint in this case in April 1994, more than one year ago. They contend that the plaintiffs' proposed complaint alleges that there were eight trustees as long ago as early 1991, and that plaintiff Mosca was a member of that alleged eight-member Board.

Therefore, defendants argue that plaintiffs must have been aware of the facts underlying the claims they seek to add when they commenced this action and delayed unduly by not raising those claims in the original complaint or by amending the original complaint soon after it was filed.

We do not agree that plaintiffs delayed unduly. This action was stayed from August 1, 1994, until April 19, 1995. When it issued the stay, the court indicated that it would not entertain any applications from the parties other than a request to enforce or modify the injunction or to lift the stay. *See International Union of Bricklayers & Allied Craftsmen Local No. 5 v. Hudson Valley District Council Bricklayers & Allied Craftsmen Joint Benefit Funds* [hereinafter "*Bricklayers*"], 858 F.Supp. 377, 380 (S.D.N.Y.1994). Plaintiffs asked for and were granted permission to make a motion for leave to amend the pleadings at the same conference at which we lifted the stay. That conference was held only two weeks after the Second Circuit affirmed the issuance of the preliminary injunction. We cannot fault plaintiffs' timeliness.

Defendants argue that "[w]here the underlying facts of the proposed amendment have been known to the moving party long before leave was sought, courts place the burden upon the movant to show valid reasons for neglect and delay in making the allegations." Defendants' Memorandum in Opposition, at 3. Both of the cases that defendants cite to support this assertion, however, involved factual situations in which the request for leave to amend was made quite late in the case and the moving party was unable to account satisfactorily for the delay. *See Evans v. Syracuse City School District*, 704 F.2d 44, 46–48 (2d Cir.1983) (affirming denial of leave to amend where, after pre-trial order issued and briefs submitted, defendant sought to amend affirmative defenses to add defense it could have asserted two years and nine months earlier; only explanation offered was unsettled state of law relating to availability of defense); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2d Cir.1990) (affirming denial of leave to amend where, after discovery completed and dispositive motion filed,

plaintiffs sought fourth amendment to add claim; only explanation offered for 17–month delay was ignorance of law).

Not only are the factual situations in *Evans* and *Cresswell* very different from the situation in this litigation, which is still in its early stages, but to the extent that the burden is on the plaintiffs to provide us with an explanation for their delay, we are satisfied that the primary reason for the delay is the court-imposed stay. Furthermore, plaintiffs contend that plaintiff Mosca was appointed to the Board of Trustees in late June 1993 and attended only one meeting of the Board before this litigation was commenced. *See* Affidavit of Philip Mosca, dated May 25, 1995, at ¶¶ 2, 3. Plaintiffs argue that until they gained access to the minutes of the 1991 Board meetings, which occurred only after the preliminary injunction was issued and the stay imposed, they were not aware that documentary support existed for their claims that the Board was properly composed of eight members. *See* Plaintiffs' Reply Memorandum, at 5. We find, therefore, that plaintiffs have not delayed unduly in requesting leave to amend their complaint.

Furthermore, defendants will not be unduly prejudiced by the addition of claims concerning the composition of the Board of Trustees. In discussing what constitutes undue prejudice, courts typically look to the time and expense that the nonmoving party has expended preparing for trial in reliance on the prior pleadings or would have to expend to address issues raised by the proposed amendments. Courts will deny leave to amend where the burdens on the nonmoving party are substantial. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971) (upholding denial of leave to amend where proposed amended defenses, raised in post-trial motion papers, would have required virtual retrial of issue of damages); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir.1985) (affirming denial of leave to amend where proposed new claims were raised after discovery had been completed and nonmoving party had filed for summary judgment); *Cresswell*, 922 F.2d at 72 (same). By con-

trast, because of the stay imposed on this case from August 1, 1994, until April 19, 1995, the parties in this case have not even begun discovery, much less filed dispositive motions or prepared for trial. Defendants have not been unfairly surprised by these claims on the eve of trial, and they certainly have adequate time to prepare to answer the plaintiffs' allegations.

Defendants also argue that they will be unduly prejudiced if plaintiffs are granted leave to amend because the added claims are based on allegations that are inconsistent with plaintiffs' prior representations—made in the pleadings, in motion papers and orally before the court during the preliminary injunction proceedings—that there were only four trustees.[4]

In all candor, we should note that this case was transferred to us long after the preliminary injunction was issued. We have no knowledge of what the parties may have said to the court in oral argument of that motion, and we have not reviewed the papers filed thereon. Therefore, we rely only upon the parties' pleadings in evaluating defendants' argument.

Defendant is correct that both the complaint and the amended complaint refer to four trustees. The plaintiffs' pleadings do not, however, explicitly assert that there are *only* four trustees. *See, e.g.,* Complaint, at ¶ 11 ("During all relevant times herein, the defendant-Trust Funds have had an equal number of trustees appointed by the [HVDC] and by employer organizations. As of January 1, 1994, two union trustees were Michael Cavallaro and Philip Mosca and Salvatore Mauro and Roderick Ciferri III were employer trustees of the defendant funds."). Indeed, the only reference in the pleadings that would lead us to conclude that plaintiffs recognized there were only four trustees is as follows: "Parietti duly appointed himself as one of the union-designated trustees,.... Philip Mosca was retained as the other union trustee." Complaint, at ¶ 12; Amended Complaint, at ¶ 12. Moreover, the validity of the claims asserted by plaintiffs in the complaint and the amended complaint does not hinge on whether there are four or eight trustees.

Therefore, we view plaintiffs' proposed complaint as adding new claims and clarifying the factual underpinnings of those claims, rather than as contradicting previous representations to the court. We see no indication that plaintiffs sought to mislead the court or the defendants by referring to only four trustees in their previous pleadings. Instead, plaintiffs seem to have carefully drafted their allegations to plead only those facts necessary to support the claims they asserted in their pleadings, while not alluding to matters that were, at that time, outside the scope of the action. We are unwilling to foreclose plaintiffs from raising potentially

---

4. Defendants' argument on this point is related to their contention that this court's prior opinions in this case have conclusively determined that the Board of Trustees had only four members. On June 21, 1994, in issuing its Order to Show Cause why a preliminary injunction should not be granted, the court stated that: "By virtue of the holding over of a previously appointed labor representative who has declined to step aside to date, Local 5 ... has only one of four rather than the authorized two out of four of the trustees of ERISA funds collecting contributions required under collective bargaining agreements within its territory." *Bricklayers,* 858 F.Supp. 373, 376 (S.D.N.Y.1994).

Defendants argue that we are bound by this statement under the law of the case doctrine and may not permit the addition of claims that would raise any issue relating to the number of trustees. *See Sanders v. Sullivan,* 900 F.2d 601, 605 (2d Cir.1990) ("Under the law of the case doctrine, this court adheres 'to its own decision at an earlier stage of the litigation' unless there are

'cogent' or 'compelling' reasons not to, such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (internal citations omitted)).

The passage in the Order to Show Cause quoted above is the only reference to four trustees that the court made; the actual preliminary injunction does not mention the number of trustees. *See Bricklayers,* 858 F.Supp. 377. Furthermore, in the Order to Show Cause, the court framed the issue before it as a question of the authority of international unions to determine, through their local personnel, the identity of union trustees. *See Bricklayers,* 858 F.Supp. at 373. The court therefore issued its preliminary injunction only with respect to the authority of plaintiff Parietti to appoint union trustees. The court makes no mention of how many union trustees Parietti would be entitled to appoint.

Under these circumstances, we do not consider ourselves bound by a passing reference in the Order to Show Cause.

meritorious claims because of one inartfully-drafted phrase that implies the existence of only four trustees.

Finally, we note that the ever-present concern of judicial economy, *see* Fed.R.Civ.P. 1 ("[The rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."), counsels that we permit plaintiffs to amend their pleadings to add the proposed claims. As plaintiffs point out, if we do not permit them to raise their claims regarding the composition of the Board of Trustees in this litigation, they may well be entitled to bring those claims in a separate action. That action would be needlessly duplicative and wasteful of the time and resources of the parties and of this court. We are persuaded, therefore, to grant plaintiffs leave to amend their pleadings to assert claims relating to whether the Board of Trustees is properly composed of four or eight trustees and to whether O'Beirne, Frank, Valente and John Parietti are duly appointed members of the Board.

B. Proposed Additional Plaintiffs

■ Rule 21, Fed.R.Civ.P., grants us broad discretion to permit a change in the parties at any stage of a litigation. *See Andujar v. Rogowski*, 113 F.R.D. 151, 154 (S.D.N.Y.1986). Parties may move pursuant to Rule 15(a), Fed.R.Civ.P., to amend their pleadings to add new plaintiffs to the litigation. *See Eickhorst v. E.F. Hutton Group, Inc.*, 763 F.Supp. 1196, 1203 (S.D.N.Y.1990); *Andujar*, 113 F.R.D. at 154. We evaluate a request to add new plaintiffs to the action under the same standard under which we analyzed plaintiffs' request to add new claims. *See Eickhorst*, 763 F.Supp. at 1203–04; *Andujar*, 113 F.R.D. at 158.

■ Given our decision that plaintiffs may amend their pleadings to assert claims regarding the composition of the Board of Trustees, it is only sensible that plaintiffs' amended pleadings may name as plaintiffs O'Beirne, Frank, Valente, and John Parietti, whose rights and obligations are the subject of those claims. Defendants are not prejudiced by the addition of these plaintiffs, nor did plaintiffs delay unduly in requesting leave to amend the pleadings to add them.

We also grant plaintiffs' request to amend their pleadings to name the International Union as a plaintiff. On March 10, 1995, with the consent of defendants, the court granted the International Union's motion to intervene, made pursuant to Rule 24, Fed.R.Civ.P. Accordingly, there is no question that the pleadings may be amended to reflect the International Union's participation in this litigation.

■ Plaintiffs may not, however, amend the pleadings to name the Funds as plaintiffs. It is quite possible that the Funds would be unduly prejudiced if we granted plaintiffs' request. The defendants have asserted counterclaims on behalf of the Funds seeking to recover allegedly unpaid employee benefit contributions due from Local 5, to audit Local 5's books, and to recover damages against plaintiff Mosca for breach of fiduciary duty. Common sense tells us that if we permitted the Funds to be named as plaintiffs in this action, those claims would not be prosecuted with same fervor.

Furthermore, plaintiffs' argument for naming the Funds as a plaintiff is based on their contention that they comprise six of the eight duly appointed trustees of the Funds. As the defendants point out, however, the proposed complaint, at most, *alleges* that O'Beirne, Frank, Valente and Frank are trustees. Until we rule on that issue, neither the purported trustees, nor the Funds, nor the court can be certain that the plaintiffs are entitled to direct the course of the litigation on the Funds' behalf. Of course, we are equally uncertain that defendants Mauro and Ciferri, who constitute at most 50% of the Board and perhaps only 25%, have that authority. Given the uncertainty with which we are faced, we prefer, in the exercise of our discretion, not to disturb the status quo. Accordingly, we deny the plaintiffs' request for leave to amend the pleadings to name the Funds as a plaintiff.

## CONCLUSION

For the foregoing reasons, we grant plaintiffs' request to amend the pleadings to assert their claims regarding the composition of the Board of Trustees of the Funds and to

name O'Beirne, Frank, Valente, John Parietti and the International Union as plaintiffs. We deny plaintiffs' request for leave to amend the pleadings to name the Funds as a plaintiff. We direct the plaintiffs to file an amended complaint that conforms with this order within 10 days. Defendants shall answer within 20 days from that date.

SO ORDERED.